STATE OF NORTH CAROLINA v. MARDY JOHN ROURKE

No. COA00-286

(Filed 5 June 2001)

## 1. Evidence— tape recording of 911 call—sufficiently audible—substantive evidence

The trial court did not abuse its discretion or commit plain error in a second-degree murder case by concluding a tape recording of the call made to the 911 emergency dispatch center including the final seconds of the argument between the victim and defendant, gunshot noises, and then a dialogue between a witness and the 911 dispatcher about the homicide was sufficiently audible to be played at trial, because: (1) the tapes were properly authenticated under N.C.G.S. § 8C-1, Rule 901(a); (2) the "click" noises between gunshots two and three did not render the tape inadmissible and the statements heard on the tape provided an objective way to reconcile the varying accounts given at trial;

(3) N.C.G.S. § 8C-1, Rule 2001 did not require the State to obtain a more reliable presentation of the tape since defendant did not request the original tape at trial nor does he present any support for the suggestion that the "clicks" were not an accurate copy of noises from the original digital recording; and (4) the tape was admissible as substantive evidence since defendant never asked for a limiting instruction that would have restricted the jury's use of the tape to corroborative evidence.

2. **Homicide— second-degree murder—premeditation and deliberation instruction—no provocation by decedent**

The trial court did not improperly instruct the jury in a second-degree murder case that there had been no provocation by decedent, because the challenged instruction was part of the trial judge's charge to the jury on the issue of premeditation and deliberation and was simply part of a list of illustrative examples of the kinds of evidence that might properly be considered by the jury.

3. **Evidence— victim's reputation for engaging in fights— cross-examination**

The trial court did not err in a second-degree murder case by allegedly failing to permit defendant to cross-examine a witness under N.C.G.S. § 8C-1, Rule 611 regarding the victim's reputation for engaging in fights, because: (1) the trial court did not prevent this inquiry but merely ruled against the form of the question; and (2) defendant did not attempt to elicit the same information by asking a better-formulated question.

Appeal by defendant from judgment entered 26 July 1999 by Judge B. Craig Ellis in Brunswick County Superior Court. Heard in the Court of Appeals 21 February 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Robert M. Curran, for the State.*

*Lisa Miles, for the defendant-appellant.*

BIGGS, Judge.

Mardy John Rourke (defendant) was convicted of second degree murder, and appeals from the conviction and judgment. The evidence at trial indicated the following: On 29 January 1999 the defendant was living in Calabash, North Carolina with a friend, Thomas Stockner

(Stockner). During that week, the defendant and Stockner had been spending time with Kenneth Long (Long), and with Jennifer Billings (Billings). The four had been drinking together in the evenings, and Long and Billings had stayed at Stockner's house for several nights. There had been no conflicts among them prior to this incident. On the night of January 29, Billings and Long arrived at Stockner's house at around 9:00 P.M. They found Stockner at home, although the defendant was out. The three drank and played pool, then visited several nearby taverns. When they returned to Stockner's house, the defendant was there. The four continued drinking, talking, and playing pool for two or three hours. They were all intoxicated, Stockner even more so than the others. At some time after midnight, an argument developed between Long and the defendant. Stockner tried to break up their dispute by displaying a shotgun, until the others told him to put his gun away. The argument between Long and the defendant grew louder and more contentious, until Long suggested that they "take it outside." The defendant declined, and retired to his room.

Billings testified that, although the defendant initially retreated from the quarrel with Long, he rejoined the others several minutes later, holding a revolver. He threatened several times to shoot Long and, when Billings intervened, he threatened to shoot her too, and fired a shot in the air. Long suggested they leave, and the two started to go out through the garage. Once in the garage, they realized that the garage door was locked, and also that Billings had left her purse inside. Long went back inside the house to unlock the door and retrieve the purse. Ten or twenty seconds after Long disappeared inside the house, Billings heard gunshots. She ran to a neighbor's house to summon help, and then waited on Stockner's porch until the police arrived.

Stockner also testified about the events of 29 January 1999. He could not recall details, because he had been so intoxicated. He did not remember an argument between Long and the defendant, and he was unable to reconstruct the sequence of events. However, he distinctly recalled hearing gunshots, and remembered that he had called 911.

The defendant testified as follows: He had previously suffered a workplace injury that left him disabled and vulnerable to paralysis if his neck were injured. When Long threatened him during their argument, the defendant got the revolver for his protection. After Long and Billings went out to the garage, Long returned and hit him on the head from behind. Long continued to hit him, and the defendant

feared that Long would twist his neck and cause him to become paralyzed. He acknowledged that he had fired several shots in the air. However, he did not know at the time that he had hit Long. He left the house and spent the night in a shed.

When the police arrived at Stockner's, they found Long lying on the floor, already dead from the gunshot wounds. The defendant had left the house by then. Stockner was present, although very drunk and belligerent. The sheriff's office immediately mounted a search of the area. They located the defendant the following morning, and arrested him for Long's murder.

Defendant presents three arguments in support of four of the assignments of error set forth in his record on appeal. The other eighteen assignments of error have not been discussed in his brief, and thus are deemed abandoned. N.C.R. App. P. 28(a) and 28(b)(5).

[1] Defendant first assigns plain error to the playing at trial of a tape recording of the call made to the 911 emergency dispatch center (911 tape) from Stockner's house during the homicide. The tape includes sounds originating from the emergency center, and other voices and noises that apparently were recorded at Stockner's house during the incident. These include the final seconds of the argument between Long and the defendant, gunshot noises, and then a dialogue between Stockner and the 911 dispatcher about the homicide. The tape's relevance to trial issues is indisputable. The defendant did not object at trial to the tape's admission into evidence, nor did he request an instruction limiting it to corroborative evidence. However, defendant argues on appeal that the trial court committed plain error by admitting the 911 tape as substantive evidence.

The plain error analysis is the appropriate standard of review when a defendant does not object to the admission of evidence at trial. *State v. Ridgeway*, 137 N.C. App. 144, 526 S.E.2d 682 (2000) (plain error analysis applied where defendant raises admissibility of hearsay on appeal, but did not object when evidence was introduced during trial). Under the plain error rule, the defendant "must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result." *State v. Roseboro*, 351 N.C. 536, 553, 528 S.E.2d 1, 12 (2000) (citations omitted). This Court has often noted that:

[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire

record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done,' or where [the error] is grave error which amounts to a denial of a fundamental right of the accused,' or the error has 'resulted in a miscarriage of justice[.]' (emphasis in original).

*State v. Odum*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). Further, the defendant who fails to object to evidence at trial bears the burden of proving that the trial court committed plain error. *State v. Reaves*, 142 N.C. App. 629, 544 S.E.2d 253 (2001); *State v. Allen*, 141 N.C. App. 610, 541 S.E.2d 490 (2000). Thus, the issue for this Court is whether the defendant has met the burden of proving that the admission of the 911 tape as substantive evidence was plain error. We find that he has not met this burden.

Defendant raises several issues regarding the 911 tape. First, he contends that it was not properly authenticated. Under N.C.G.S. § 8C-1, Rule 901(a) (1999), a tape recording may be authenticated by "evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(b)(5) includes voice identification among the examples of means by which a party may authenticate a tape. In the instant case, the State claimed that the tape was a record of the 911 call between Stockner's house and the 911 emergency center. Jason Benton, of the Brunswick County 911 center, testified that the tape was an exact copy of the digital telephone recording made the night of the incident. He had listened both to the original and to the copy, and testified that they were identical. He identified the voices of 911 emergency center employees on the tape. Billings and defendant testified that they could identify the other voices on the tape as those of Stockner, Long, and the defendant. We find this evidence sufficient to support a finding that the tape was what the State contended it to be: a recording of the 911 call made during this incident.

The defendant also contends that the presence of clicking noises on the tape, which the prosecutor argued were the sounds of the defendant cocking his gun between shots, were "inaudible" and rendered the tape inadmissible. We disagree. Defendant correctly states that an otherwise properly authenticated tape should not be admitted unless it is audible, intelligible, and not obviously fragmented. *State v. Williams*, 334 N.C. 440, 434 S.E.2d 588 (1993), *judgment vacated on other grounds*, 511 U.S. 1001, 128 L. Ed. 2d 42 (1994); *State v. Lynch*, 279 N.C. 1, 181 S.E.2d 561 (1971). Whether a tape is suffi-

ciently audible to be admitted is in the discretion of the trial judge, and will not be reversed absent an abuse of that discretion. *State v. Womble,* 343 N.C. 667, 473 S.E.2d 291 (1996). "[A] tape [recording] should not be excluded merely because parts of it are inaudible if there are other parts that can be heard." *Searcy v. Justice and Levi v. Justice,* 20 N.C. App. 559, 565, 202 S.E.2d 314, 318, *cert. denied,* 285 N.C. 235, 204 S.E.2d 25 (1974). The defendant contends that a clicking noise heard on the tape was "inaudible." We do not find that the 'click' noises between gunshots two and three render the tape inadmissible. Moreover, the defendant does not argue that the voices heard on the tape were inaudible. We do not agree with defendant that the click noises were "the crux of the state's case." The most significant feature of the tape is the conversation immediately before, during, and after the gunshots. This is especially true in view of the fact that at the time of trial the defendant was the only eyewitness who testified in detail about the moments surrounding the gunshots. Long was deceased; Billings had been in the garage and had neither seen the men, nor been able to hear their conversation at the time of the shooting; and Stockner was unable to recall the events with clarity. The statements heard on the tape provide an objective way to reconcile the varying accounts given at trial. We do not find that the trial court abused its discretion or committed plain error by finding the tape sufficiently audible to be admitted.

The defendant also argues that the 'click' might be an artifact of the taping process, and that N.C.G.S. § 8C-1, Rule 1002 (1999) (the "best evidence" rule) required the State to obtain "a more reliable presentation of the tape" before it could be admitted. However, he did not request the original tape at trial, nor does he present any support for the suggestion that the 'clicks' were not an accurate copy of noises from the original digital recording.

Defendant also contends that, assuming the tape to be admissible for corroborative purposes, it was error to admit it as substantive evidence. We do not agree. Upon a proper foundation, a tape recording is admissible as either illustrative or substantive evidence. N.C.G.S. § 8-97 (1999). We find that the tape was properly authenticated, and that it was relevant to trial issues. *See, e.g., State v. Brewington,* 343 N.C. 448, 471 S.E.2d 398 (1996) (videotape relevant to "critical issue" of sequence of events at the time of the shooting); *State v. Kuplen,* 316 N.C. 387, 343 S.E.2d 793 (1986) (stating rule that tape recordings admissible as substantive evidence upon proper foundation). We find the tape admissible as substantive evidence. Further, the defendant

never asked for a limiting instruction that would have restricted the jury's use of the tape to corroborative evidence. "The admission of evidence which is competent for a restricted purpose will not be held error in the absence of a request by the defendant for limiting instructions." *State v. Jones*, 322 N.C. 406, 414, 368 S.E.2d 844, 848 (1988). *See also State v. Taylor*, 344 N.C. 31, 473 S.E.2d 596 (1996) (defendant who fails to ask that hearsay testimony be received only for corroboration "cannot now complain" that no limiting instruction was given). Thus, even assuming *arguendo*, that the tape was admissible only as corroborative evidence, the defendant has waived this issue.

This Court has examined the record, including the exhibit at issue, and does not find that the trial court committed plain error in the admission of the 911 tape. This assignment of error is overruled.

[2] Defendant next argues that the trial judge committed plain error by instructing the jury that there had been no provocation by the decedent. This argument is without merit. The challenged instruction was part of the trial judge's charge to the jury on the issue of premeditation and deliberation, in which the court stated the following:

> Neither premeditation nor deliberation are usually susceptible of direct proof. They may be proved by circumstances from which they may be inferred <u>such as</u> the lack of provocation by the victim, conduct of the defendant before, during, and after the killing, threats and declarations of the defendant, use of grossly excessive force, infliction of lethal wounds after the victim is felled, brutal or vicious circumstances of the killing, the manner in which or the means by which the killing was done. (emphasis added).

The defendant's contention is that the court's use of the word "the" (in the phrase "the lack of provocation by the victim") amounted to an instruction that there had in fact been no provocation. We cannot agree. It is clear from a reading of this instruction that the challenged phrase was simply part of a list of illustrative examples of the kinds of evidence that might properly be considered by the jury on the issue of premeditation and deliberation. This instruction previously has been upheld by our appellate courts. In *State v. Cummings*, 326 N.C. 298, 389 S.E.2d 66 (1990), the defendant made a similar argument, in regard to the same instruction. The North Carolina Supreme Court held:

The above-cited instruction was delivered straight from the North Carolina Pattern Jury Instructions. N.C.P.I.—Crim. 206.10. The elements listed are merely examples of circumstances which, if found, the jury could use to infer premeditation and deliberation.

*Id.* at 315, 389 S.E.2d at 76. *See also State v. Stevenson*, 327 N.C. 259, 393 S.E.2d 527 (1990) (holding that court giving this instruction does not express an opinion that lack of provocation was proven in the case). It is not required that there be evidence of each of these circumstances before the court may give this instruction. *State v. Blakeney*, 352 N.C. 287, 531 S.E.2d 799 (2000). We find no error in the trial judge's instruction on premeditation and deliberation, and accordingly overrule this assignment of error.

**[3]** Finally, defendant asserts that the trial court committed reversible error by not permitting him to cross-examine Stockner regarding Long's reputation for engaging in fights. This assignment of error arose from the following exchange during the defendant's cross-examination of Stockner:

Q. You know Kenny Long's reputation or character for being a fighting person, do you not?

A. I have never seen him fight.

Q. You know of instances, though, when he had been in fights?

A. I don't know of any. I have heard talk of the past.

Q. So he does have a reputation of sometimes getting into fights?

Mr. Bollinger: OBJECTION TO THAT.

The Court: SUSTAINED <u>AS TO THE FORM</u>. (emphasis added)

Q. Kenny Long was not the kind of person who would take being pushed around, was he?

A. I wouldn't think so. I would hope he would stand up for himself.

N.C.G.S. § 8C-1, Rule 611 (1999), which governs cross-examination, provides that:

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the

ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Rule 611(a). This Court has held that "the scope of cross-examination rests largely within the trial court's discretion and is not ground for reversal unless the cross-examination is shown to have improperly influenced the verdict." *State v. Parker*, 140 N.C. App. 169, 183, 539 S.E.2d 656, 666 (2000) (citation omitted). In the present case, the defendant sought to cross-examine Stockner regarding Long's reputation for violence and fighting, in support of his trial testimony that Long was the aggressor in their fight. We find that the trial judge did not prevent the defendant from exploring this avenue of inquiry. The court merely ruled against the <u>form</u> of <u>one</u> question. The defendant did not attempt to elicit the same information by asking a better-formulated question. This assignment of error is overruled.

For the reasons discussed above, we find that the defendant received a fair trial, free from any reversible error. Accordingly, we find no prejudicial error.

No error.

Judges WALKER and SMITH concur.