725 S.E.2d 466 (2012)
STATE of North Carolina
v.
Demeatrius Antonio MONTGOMERY.
No. COA11-1134.
Court of Appeals of North Carolina.
May 15, 2012.
*467 Attorney General Roy Cooper by Special Deputy Attorney General Jonathan P. Babb for the State.
Appellate Defender Staples S. Hughes by Assistant Appellate Defender Andrew DeSimone for defendant-appellant.
STEELMAN, Judge.
The trial court did not err in holding that defendant was competent to stand trial. Admission *468 of victim character evidence did not constitute plain error. The State's arguments were not grossly improper, so as to require intervention by the trial court, ex mero motu.

I. Factual and Procedural Background
On 31 March 2007, two Charlotte-Mecklenburg police officers, Jeffrey Ryan Shelton and Sean Robert Clark, responded to a 911 call involving a domestic dispute at an apartment complex located on Barrington Drive in Charlotte. After the officers resolved the dispute, a confrontation took place between the officers and Demeatrius Antonio Montgomery (defendant). This confrontation was unrelated to the domestic dispute. Shots were fired. Officers Shelton and Clark were killed. Defendant fled.
On 23 April 2007, defendant was indicted for the murders of the two officers. A jury found defendant guilty of two counts of first-degree murder, based upon malice, premeditation and deliberation, and also under the felony murder rule. On 1 October 2010, Judge Bridges sentenced defendant to two consecutive terms of life imprisonment without parole.
Defendant appeals.

II. Capacity to Proceed
In his first argument, defendant contends that the trial court's ruling that defendant was capable of proceeding to trial was unsupported by the evidence. We disagree.
"The determination of whether a defendant is competent to stand trial rests within the trial court's discretion and the burden of persuasion falls upon the defendant." State v. Coley, 193 N.C.App. 458, 461, 668 S.E.2d 46, 49 (2008), aff'd, 363 N.C. 622, 683 S.E.2d 208 (2009). "The trial court's findings of fact, as well as its final determination, will be upheld on appeal if supported by the evidence." Id.
No person may be tried, convicted, sentenced, or punished for a crime when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner. This condition is hereinafter referred to as "incapacity to proceed."
N.C. Gen.Stat. § 15A-1001(a)(2011).
Defendant made three motions seeking a determination that he was incapable of standing trial. The first motion was filed on 20 July 2009, and was denied by Judge Albert Diaz by order filed 29 September 2009. In making this ruling, Judge Diaz considered the testimony of the State's expert psychiatrist, Dr. Nicole Wolfe, and the testimony of defendant's experts, Dr. George Corvin, Dr. James Hilkey, and Dr. Seymour Halleck. Judge Diaz noted that the evidence of defendant's behavior suggested that defendant could assist in his defense, if he chose to do so. Judge Diaz did not find sufficient support in the evidence for the three defense experts' opinion that defendant was incapable of proceeding to trial.
The second motion was filed on 19 March 2010. Judge Bridges denied defendant's request in an order filed on 27 May 2010. Judge Bridges noted that defendant failed to offer evidence of any changes in his condition or new information to serve as the basis for ordering a new examination.
Defendant filed a third motion to be found incompetent to proceed on 20 July 2010. Defendant withdrew this motion after the trial court declared the case non-capital as a sanction for discovery violations by the State. After the withdrawal of the motion, the trial court properly conducted an inquiry as to defendant's capacity to proceed ex mero motu. See State v. Heptinstall, 309 N.C. 231, 235-36, 306 S.E.2d 109, 112 (1983).
On 25 August 2010, Judge Bridges found defendant competent to stand trial. He based his ruling on written reports from defendant's experts, Dr. Hilkey, dated 22 August 2010, and Dr. Corvin, dated 16 August 2010. Judge Bridges noted that Dr. Hilkey "obtained a higher degree of cooperation" from defendant than Dr. Corvin. This supported the trial court's finding that defendant's silence and general lack of cooperation was volitional. Judge Bridges found that Dr. Hilkey indicated that defendant's silence was "of his own choosing" and further indicated that the IQ testing showing that defendant *469 had a borderline IQ was probably an underrepresentation of defendant's intellectual abilities.
Defendant's brief does not specify from which ruling he is appealing. At oral argument, counsel for defendant stated that defendant's appeal was from the third order, entered by Judge Bridges on 25 August 2010. Defendant argues that Dr. Wolfe's opinion was "stale by the time of trial" and that the trial court's decision was unsupported by the evidence.
The trial court's 25 August 2010 ruling was supported by evidence from Dr. Hilkey. In his report, dated 22 August 2010, Dr. Hilkey noted: "I have questioned the volitional nature of Mr. Montgomery's mutism and conclude that some of his decisions to communicate are of his own choosing." Judge Bridges discounted Dr. Corvin's report and the opinions contained therein as being merely reiterations of the opinions presented to and rejected by Judge Diaz at the 2009 hearing. Judge Bridges did not rely upon Dr. Wolfe's opinion in reaching his decision that "Defendant is able to understand the nature and object of these proceedings against him, comprehend his own situation in reference to those proceedings, and to assist in his defense in this case in a rational, reasonable manner if he chooses to do so."
The trial court did not abuse its discretion in finding defendant competent to stand trial.

III. Victim Character Evidence
In his second argument, defendant contends that the State introduced impermissible evidence regarding the character of the two police officers "to prove action in conformity therewith, bolstering its assertion that Mr. Montgomery was a cold-blooded killer." We disagree.

A. Standard of Review
By failing to object to the testimony at trial, defendant has not preserved the issue for appeal. We review this issue for plain error only. State v. Rourke, 143 N.C.App. 672, 675, 548 S.E.2d 188, 190 (2001).
[T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a "fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "`resulted in a miscarriage of justice or in the denial to appellant of a fair trial'" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."
State v. Odom, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (alterations in original) (quoting United States v. McCaskill, 676 F.2d 995, 1002 (4th Cir.1982) (footnotes omitted)).
To show plain error, "a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudicethat, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." State v. Lawrence, ___ N.C. ___, ___, 723 S.E.2d 326, 334 (2012) (internal citation and quotation marks omitted).
"[T]he defendant who fails to object to evidence at trial bears the burden of proving that the trial court committed plain error." Rourke, 143 N.C.App. at 676, 548 S.E.2d at 190. "[T]he test for plain error places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection." State v. Walker, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986) (internal quotation marks omitted).

B. Analysis
Generally, "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion[.]" N.C.R. Evid. 404(a) (2011). Evidence of a victim's character for peacefulness is allowed "in a homicide case to rebut evidence that the victim was the first aggressor[.]" N.C.R. Evid. 404(a)(2) (2011).
*470 The widows of the two police officers testified as to their good character. Out of a total of over 3,000 pages of trial testimony, the widows' testimony amounted to about 26 pages. The State presented evidence of defendant's guilt, including testimony from numerous witnesses, placing an individual matching defendant's physical description at the apartment complex before and after the shooting; gunshot residue evidence from defendant's hands; and a box of ammunition with defendant's fingerprints found in defendant's bedroom consistent with the ammunition used at the scene.
In State v. Buie, 194 N.C.App. 725, 671 S.E.2d 351 (2009), the defendant argued that the trial court erred in admitting good character evidence of the victim. Buie, 194 N.C.App. at 728, 671 S.E.2d at 353. The Court held that other physical and testimonial evidence refuted the defendant's claim that there was a reasonable possibility that the jury would have reached a different verdict. Buie, 194 N.C.App. at 729-30, 671 S.E.2d at 354. The Court concluded that the defendant failed to show prejudice under the harmless error analysis of N.C. Gen.Stat. § 15A-1443(a). Id.
In the instant case, the State presented testimonial and physical evidence that refutes defendant's claim that, absent the character evidence, the jury probably would have reached a different verdict. Defendant failed to object at trial and is therefore held to a heavier burden than the defendant in Buie. Defendant has failed to show that the admission of the evidence of the victims' good character had a probable impact on the jury's finding that defendant was guilty.
The admission of evidence of the victims' good character did not rise to the level of plain error.

IV. State's Arguments
In his third argument, defendant contends that the State argued facts that were not supported by the evidence. We disagree.

A. Standard of Review
Defendant did not object to the arguments. "[O]ur appellate courts may, in the absence of an objection by the defendant, review a prosecutor's argument to determine whether the argument was so grossly improper that the trial court committed reversible error in failing to intervene ex mero motu to correct the error." State v. Williams, 317 N.C. 474, 482, 346 S.E.2d 405, 410 (1986).
We have consistently held that counsel must be allowed wide latitude in the argument of hotly contested cases. He may argue to the jury the facts in evidence and all reasonable inferences to be drawn therefrom together with the relevant law so as to present his side of the case.... Even so, counsel may not employ his argument as a device to place before the jury incompetent and prejudicial matter by expressing his own knowledge, beliefs and opinions not supported by the evidence[.]
State v. Jones, 317 N.C. 487, 500, 346 S.E.2d 657, 664-65 (1986) (alteration in original).

B. Analysis
At the beginning of the trial, in its opening statement to the jury, the State argued that defendant "was having some drinks, listening to some music, including Pastor Troy's Murda Man. The evidence will show that while Jeff and Sean were doing the job that they loved to do, this Defendant was getting geared up, getting geared up for the plan that he was putting in place." Similarly, in its closing argument to the jury, the State argued that after defendant "looked out that window and saw police cars, he started dancing and acting crunk. And what song, what did he put in and what song was he dancing to? Murda Man, getting worked up."
Defendant argues that the State manipulated the sequence of events and drew an unreasonable inference in arguing that defendant was listening to "Murda Man" after he saw the police out of his apartment window.
In Williams, the Supreme Court found error where the prosecutor made contentions for which the State introduced at trial "absolutely no evidence whatsoever" and which were not reasonable inferences from any facts which had been introduced. Williams, 317 N.C. at 482, 346 S.E.2d at 410.
*471 In the instant case, there was testimony that defendant was listening to "Murda Man" on the night of the shootings and that while defendant was dancing to that music, defendant noticed police officers outside of his apartment window. The sequence of events suggested by the State in its argument was a reasonable inference that could be drawn from the evidence presented at trial. The argument was not so grossly improper that the trial court committed reversible error in failing to intervene ex mero motu.
This argument is without merit.
NO ERROR.
Judges GEER and HUNTER, Jr. concur.