STATE OF NORTH CAROLINA v. JAMES McQUEEN BUIE, Defendant

No. COA07-1522

(Filed 6 January 2009)

### 1. Evidence— victim's good character—harmless error

The trial court committed harmless error in a first-degree sexual assault, robbery with a dangerous weapon, second-degree kidnapping, and first-degree rape case by admitting evidence of the victim's good character because: (1) although the State should not have been allowed to introduce evidence in its case-in-chief about the victim's good character merely based on the fact that defense counsel forecast the introduction of evidence of the victim's bad character during his opening statement, there was sufficient evidence in the record including testimony by the victim, physical evidence from the crime scene, and testimony by another woman who had also been approached by defendant in the same parking lot that afternoon; and (2) there was no reasonable possibility that the jury would have reached a different verdict absent this error.

### 2. Evidence— impermissible lay opinion—narration of surveillance tapes by detective without firsthand knowledge or perception

The trial court committed harmless error in a first-degree sexual assault, robbery with a dangerous weapon, second-degree kidnapping, and first-degree rape case by allowing the State's witness, a detective, to narrate the surveillance tapes from a bank and hospital, and to offer his opinion of what the tapes depict, because: (1) although the evidence was narrative testimony about the depiction of two poor quality surveillance videos constituting an inadmissible lay opinion invading the province of the jury since it was not based on any firsthand knowledge or perception by the officer, but rather solely on the detective's viewing of the surveillance video, it was only applicable to the robbery with a dangerous weapon and second-degree kidnapping charges; (2) the jury heard other testimony supporting the victim's claim that she was kidnapped; (3) the trial court, despite wrongfully admitting the detective's testimony, also repeatedly instructed the jury that it was charged with evaluating the images on the videotape and was free to disagree with the detective's interpretation, thus likely curing any impermissible

reliance by jurors on the detective's statements; and (4) the victim's own testimony about what happened in the parking lot and at the bank, the knife recovered from the crime scene, and the victim's report of her rape and abduction constituted sufficient evidence to support the jury's decision independent from the detective's testimony.

Judge ARROWOOD concurred prior to 31 December 2008.

Appeal by defendant from judgments entered 13 March 2007 by Judge Mark E. Powell in Superior Court, Buncombe County. Heard in the Court of Appeals 21 October 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Charles E. Reece, for the State.*

*Glover & Petersen, P.A., by James R. Glover, for defendant-appellant.*

WYNN, Judge.

Defendant James McQueen Buie appeals his convictions for first-degree sexual assault, robbery with a dangerous weapon, second-degree kidnapping, and first-degree rape. He argues that the trial court erred in allowing the admission of character evidence about the alleged victim and the narration of video surveillance tapes by a police detective. After careful review of the record, we hold that the trial court committed error in the admission of this evidence; however, finding the error to be harmless, we affirm.

At trial, the State presented evidence tending to show the following: On the afternoon of 28 June 2006, Defendant approached a female in the parking lot of Mission Hospital in Asheville, North Carolina. Defendant forced his way into her car at knife point. Defendant, with the female in the passenger's seat, drove to a nearby automatic teller machine (ATM) and withdrew cash using her ATM card and pin number. During the stop at the ATM, the female attempted to get out of the car but was only able to get her right leg out of the vehicle before Defendant pulled her back into the car, pointing the knife at her face.

Using the money he obtained from the female's bank account, Defendant drove to a nearby apartment complex where he purchased crack cocaine. After Defendant smoked some of the crack cocaine in

STATE v. BUIE

[194 N.C. App. 725 (2009)]

the car, he drove the female to a secluded, wooded area. Defendant ordered the female out of the car, telling her he was going to make her smoke with him and then let her go. Defendant, leaving the knife inside the car and handing the female the keys, pushed her into the woods.

Over the course of a number of hours, Defendant smoked the crack cocaine and blew the smoke into the female's mouth approximately ten to fifteen times. At some point, after Defendant ran out of crack cocaine, he began groping her chest and groin and kissing her. Despite her pleas to stop, Defendant yanked her hair, reached inside her pants, and put his fingers inside her vagina. Then, after forcibly removing her pants and telling her to lie down on the ground, Defendant "put his penis into [her] vagina."

After a few minutes, Defendant got up, dressed, and told the female "we can leave now." She dressed and followed Defendant back to the car. Defendant got into the driver's seat, tossed the knife out of the car window, and drove to a friend's apartment where they arrived after 11:30 p.m. The female testified that Defendant told her that the people in the apartment "were his friends, that I should not tell them anything that was going on . . . and if he told them that I had money that they would want money, that they would help him."

During the approximately two hours the female was at the apartment with Defendant and two others, Defendant took her into a back bedroom and repeatedly "forced" her "to ingest cocaine by blowing the smoke into her mouth." Although Defendant had previously told the female that as soon as his friend came to pick him up she would be free to leave, Defendant eventually asked her to drop him off somewhere nearby. At that point, the female told the man and woman in the apartment that Defendant had kidnapped and raped her. Shortly thereafter, the woman in the apartment escorted the female out to her car where the female called her husband, and then drove herself to the emergency room.

After a jury trial, Defendant was convicted of first-degree sexual assault, robbery with a dangerous weapon, second-degree kidnapping, and first-degree rape. Appealing his conviction, Defendant argues that the trial court erred by (I) admitting evidence of the female's good character and (II) allowing a police officer to offer narrative testimony of the surveillance footage from the bank and site of the alleged kidnapping.

I.

**[1]** Defendant first argues that the trial court erred by admitting evidence of the female's good character.[1] As a general rule, relevant evidence is "admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of North Carolina, by Act of Congress, by Act of the General Assembly" or by the North Carolina Rules of Evidence. N.C. Gen. Stat. § 8C-1, Rule 402 (2007). Further, Rule 403 adds: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . or misleading the jury . . . ." N.C. Gen. Stat. § 8C-1, Rule 403 (2007).

In addition to the general rules of relevancy, the North Carolina Rules of Evidence set out specific rules for the admission of character evidence. "Evidence of a person's character or a trait of his character is *not* admissible for the purpose of proving that he acted in conformity therewith on a particular occasion" unless one of the following circumstances apply:

> (2) Character of victim.—Evidence of a pertinent trait of character of the victim of the crime offered by an accused, *or by the prosecution to rebut the same,* or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor[.]

N.C. Gen. Stat. § 8C-1, Rule 404(a) (2007) (emphasis added). Thus, in cases where character evidence of the victim is *not* offered to rebut evidence that the victim was the first aggressor, "the rule allows the prosecution to introduce evidence of a victim's character only to rebut defendant's evidence calling it into question." *State v. Quick,* 329 N.C. 1, 26, 405 S.E.2d 179, 194 (1991).

Here, Defendant argues that the trial court erred in allowing testimony by the female and her mother regarding her good character, community service, academic achievements, and family involvement. The State contends that the defense "opened the door" to the admission of this testimony under Rule 404(a)(2) by calling into question the female's character during its opening statement. In the opening

---

1. Defendant-Appellant's assignments of error and objections at trial also cite inadmissibility under N.C. Gen. Stat. § 8C-1, Rule 610; however, Appellant's brief contains no discussion of inadmissibility on these grounds. In accordance with the North Carolina Rules of Appellate Procedure Rule 28(a) (2007), Appellant's Rule 610 argument is deemed abandoned.

statement, the defense counsel stated that Defendant and the female decided to leave the parking lot together; she voluntarily gave him her ATM card to withdraw money; they smoked crack cocaine together; they had consensual sex; and the female subsequently fabricated her allegations of kidnapping, rape, and robbery. Thus, the threshold issue before us is whether statements made by the defense counsel during his opening statement are sufficient to constitute "evidence" under Rule 404(a)(2), allowing the prosecution to offer rebuttal evidence of the female's character. We find *State v. Faison*, 330 N.C. 347, 411 S.E.2d 143 (1991), to be instructive.

In *Faison*, our Supreme Court held that, under Rule 404(a)(2), the prosecution may not introduce evidence of the victim's peaceful character until the Defendant has submitted evidence that the victim was the first aggressor. *Id.* Additionally, the Court found that opening statements by counsel are not "evidence" for the purposes of Rule 404 and thus "the prosecution should have waited until rebuttal to introduce its evidence concerning the peacefulness of [Defendant]." *Faison*, 330 N.C. at 356, 411 S.E.2d at 148. *Cf. State v. Murillo*, 349 N.C. 573, 600, 509 S.E.2d 752, 768 (1998) (holding that the trial court did not abuse its discretion in a capital first-degree murder case by allowing the admission of "character evidence concerning the victim's performance as a school teacher" to rebut the claim in defendant's opening statement that victim was an "irresponsible," "violent," and abusive alcoholic), *cert. denied*, 528 U.S. 838, 145 L. Ed. 2d 87 (1999).

In light of *Faison*, we hold that the State should not have been allowed to introduce evidence in its case-in-chief about the female's good character merely because the Defendant forecast the introduction of evidence of the female's bad character. *Faison*, 330 N.C. at 355, 411 S.E.2d at 147. Since the Defendant offered no evidence in his case-in-chief of the female's bad character, we agree with Defendant that the admission of character evidence regarding the female's good character was in error.

However, in order for an error to be prejudicial to a Defendant, there must be "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen. Stat. § 15A-1443(a) (2007). In this case, there is sufficient evidence in the record and trial transcripts, including testimony by the female, physical evidence from the crime scene, and testimony by another woman, who had also been approached by Defendant in the parking lot that afternoon,

to refute Defendant's claim that, but for the admission of the character evidence, there is a reasonable possibility that the jury would have reached a different verdict. Accordingly, we hold that the erroneous admission of the character evidence was harmless.

II.

**[2]** Defendant further argues that the trial court erred in allowing the State's witness, Detective Welborn, to narrate the surveillance tapes from the bank and hospital, and to offer his opinion of what the tapes depict. "When reviewing a trial court's rulings on the admission or exclusion of lay witness or expert testimony, we review for abuse of discretion." *State v. Llamas-Hernandez*, 189 N.C. App. 640, 743, 659 S.E.2d 79, 81 (2008).

Under the North Carolina Rules of Evidence, the jury is charged with determining what inferences and conclusions are warranted by the evidence. *State v. Peterson*, 225 N.C. 540, 543, 35 S.E.2d 645, 646 (1945), *overruled in part on other grounds by State v. Hill*, 236 N.C. 704, 73 S.E.2d 894 (1953). However, the introduction of lay opinion testimony may be admissible under certain circumstances.

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C. Gen. Stat. § 8C-1, Rule 701 (2007).

The current national trend is to allow lay opinion testimony identifying the person, usually a criminal defendant, in a photograph or videotape "where such testimony is based on the perceptions and knowledge of the witness, the testimony would be helpful to the jury in the jury's fact—finding function rather than invasive of that function, and the helpfulness outweighs the possible prejudice to the defendant from admission of the testimony." Brent G. Filbert, Annotation, *Admissibility of Lay Witness Interpretation of Surveillance Photograph or Videotape*, 74 A.L.R.5th 643, 653 (1999); *see also Robinson v. People*, 927 P.2d 381, 384 (Colo. 1996) ("[A] lay witness may testify regarding the identity of a person depicted in a surveillance photograph if there was some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than is the jury.").

Defendant challenges the admissibility of Detective Welborn's testimony interpreting the surveillance videotape from the hospital where the female worked and from the bank during the time the female's card was used at the ATM.[2] At trial, the State questioned Detective Welborn extensively about both tapes, asking him whether the actions depicted by the surveillance videotapes were "consistent with" the testimony of the female. Over Defendant's objections, the State repeatedly asked Detective Welborn whether the admittedly "poor quality" images from the surveillance tapes were consistent with the female's prior testimony. Specifically, Detective Welborn testified that the bank's surveillance video was consistent with the female's testimony that, while Defendant was using her ATM card to withdraw cash from her account, she attempted to exit the vehicle.

Q: Are you able to see that image?

A: Yes.

Q: Is that consistent with a door being opened?

Defense Counsel: Objection, your Honor. It's for the jury to decide that [sic] the tape shows.

Court: Overruled.

A: It does appear to be a door opening on the vehicle.

Q: Right there. (Indicating with laser pointer.) (Playing some more of the tape).

Q: Is this consistent with the door being closed?

Defense Counsel: Objection, your Honor.

Court: Overruled.

A: Yes.

Q: And did it drive away?

A: Yes, the vehicle drove away.

The State argues that this testimony was properly permitted by the trial court as a "shorthand statement of facts" in which the wit-

2. The State acknowledges that Detective Welborn was not testifying as an expert. Rather, Detective Welborn offered his lay opinion, based on his review of the surveillance tapes under his investigation, as to what was shown.

STATE v. BUIE

[194 N.C. App. 725 (2009)]

ness's "instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time" have been held to be admissible. *State v. Spaulding*, 288 N.C. 397, 411, 219 S.E.2d 178, 187 (1975) (internal quotation marks and citation omitted), *vacated in part on other grounds by Spaulding v. North Carolina*, 428 U.S. 904, 49 L. Ed. 2d 1210 (1976); *see also State v. Shaw*, 322 N.C. 797, 370 S.E.2d 546 (1988) (finding no error in the admission of an officer's shorthand statement that the pattern of wear on defendant's shoes was similar to the pattern on the shoes found behind the victim's home).

In support of its position, the State relies on *State v. Alexander*, 337 N.C. 182, 446 S.E.2d 83 (1994). In that case, the Court found that the admission of testimony by a police officer, stating that the small openings visible from a photograph of the victim's arm appeared to be buckshot wounds, was not in error, despite the officer not having firsthand knowledge of whether the wounds were in-fact caused by buckshot. *Alexander*, 337 N.C. at 190-91, 446 S.E.2d at 88. However, the evidence at issue in *Alexander* was a still photograph of a discrete object and a single isolated statement that the photograph depicted a buckshot wound. *Id.*

The evidence at issue here is narrative testimony about the depiction of two poor quality surveillance videos, each several minutes in length. Rather than identifying a type of wound in a still photograph, Detective Welborn offered his opinion, at length, about the events depicted in the surveillance tapes, concluding that the video corroborated the female's testimony. Thus, we find that the testimony offered by Detective Welborn was not a shorthand statement of facts, but rather an inadmissible lay opinion testimony that invaded the province of the jury.

We observe in passing that this Court has upheld the admission of similar testimony by law enforcement officials only when their interpretations were based in part on firsthand observations. In *State v. Mewborn*, 131 N.C. App. 495, 499, 507 S.E.2d 906, 909 (1998), the court permitted the testimony of an officer that the markings on the defendant's shoes were "very consistent" with shoes worn by the perpetrator in a video of the robbery. However, in *Mewborn*, the officer's testimony was based on his comparison between the defendant's shoes, which the officer had the opportunity to observe when the defendant was brought in for questioning, and the shoe markings visible in the videotape. *Id.*

Further, in *State v. Thorne*, 173 N.C. App. 393, 618 S.E.2d 790 (2005), the Court upheld the admission of testimony by a police officer that the gait of the perpetrator, observed from a lost surveillance video, was similar to defendant's gait. Once again, the officer in *Thorne* was not only " 'trained to notice differences in the actual ways people walk[ed]' " but, he also testified that he had observed the defendant's gait in the past. *Thorne*, 173 N.C. App. at 399, 618 S.E.2d at 795.

The evidence at issue here is distinguishable from that in *Mewborn* and *Thorne* in that it was not based on any firsthand knowledge or perception by the officer, but rather solely on the detective's viewing of the surveillance video. Indeed, Detective Welborn was not offering his interpretation of the similarities between evidence he had the opportunity to examine firsthand and a videotape, but rather offering his opinion that the actions depicted in the surveillance video were similar to the female's recollection of the alleged kidnapping and robbery. Accordingly, we find that the admission of Detective Welborn's testimony was in error.

Having found the trial court's admission in error, we must determine whether the error was prejudicial toward the Defendant. N.C. Gen. Stat. § 15A-1443(a); *State v. Wilson*, 121 N.C. App. 720, 723, 468 S.E.2d 475, 478 (1995) ("A defendant wishing to overturn a conviction on the basis of error relating to non-constitutional rights has the burden of showing a reasonable possibility that a different result would have been reached at trial absent the error."). Defendant argues that this error was prejudicial since the jury was tasked with resolving two conflicting accounts of that day's events. Given the poor quality of the images on the videotape, he argues the narration by Detective Welborn greatly influenced the jury's decision in finding Defendant guilty on the charges of first-degree sexual assault, robbery with a dangerous weapon, second-degree kidnapping, and first-degree rape. However, Detective Welborn's testimony is only potentially relevant to two of the issues before the jury, robbery with a dangerous weapon and second-degree kidnapping, as the wrongfully admitted testimony only addressed the surveillance video from the bank and hospital. After careful review of the evidence, we conclude that the trial court did not commit prejudicial error.

First, the jury heard other testimony supporting the female's claim that she was kidnapped. Katherine Michelson, who was not harmed, testified that on the same afternoon the female was kidnapped, she also was approached by Defendant in the hospital park-

ing lot, and that Defendant similarly claimed to have locked his keys in his car and requested her assistance. Further, the trial court, despite wrongfully admitting Detective Welborn's testimony, also repeatedly instructed the jury that they were charged with evaluating the images on the videotape and were free to disagree with the detective's interpretation. The transcript reflects the following statements by the Court: "Members of the jury, as you hear this witness testify about what these images are consistent with you may agree or disagree. That's up to you to decide . . . Members of the jury, it's up to you to decide what the video shows. Please keep that in mind." While the court committed error by allowing Detective Welborn's testimony, as he was in no better position than the jury to determine what the videotapes did or did not illustrate, the trial court's instruction to the jury likely cured any impermissible reliance by jury members on the detective's statements. Further, the female's own testimony about what happened in the parking lot and at the bank, the knife recovered from the crime scene, and the female's report of her rape and abduction constitute sufficient evidence to support the jury's decision, independent from the testimony by Detective Welborn.

Accordingly, we hold that the error of admitting Detective Welborn's testimony regarding the surveillance videos was harmless.

No prejudicial error.

Judge BRYANT concurs.

Judge ARROWOOD concurs prior to 31 December 2008.