**STATE v. HESTER**

[224 N.C. App. 353 (2012)]

━━━━━━━━━

STATE OF NORTH CAROLINA

v.

DARRYL HESTER

No. COA12-480

Filed 18 December 2012

1. **Appeal and Error—preservation of issues—plain error— failure to show prejudicial impact**

     Although defendant contended in a felonious larceny case that it was plain error for the trial court to allow three witnesses to testify about what they saw on the original surveillance video, this argument was dismissed. By failing to provide the Court of Appeals with any analysis of the prejudicial impact of the chal-lenged testimony, defendant waived appellate review of this issue.

2. **Appeal and Error—preservation of issues—indictment variance—failure to argue—failure to renew motion to dis-miss—waiver**

     Although defendant contended in a felonious larceny case that a variance existed between the facts alleged in his indict-ment and the evidence produced at trial, this argument was dis-

missed. Defendant made a general motion to dismiss at the close of the State's evidence, but did not specifically raise the question of a variance. Further, defendant also failed to renew his motion to dismiss at the close of all evidence.

## 3. Constitutional Law—effective assistance of counsel—dismissal without prejudice

Defendant's claim for ineffective assistance of counsel in a felonious larceny case was dismissed without prejudice to defendant's right to file a motion for appropriate relief in the superior court.

Judge ELMORE dissenting in part and concurring in part.

Appeal by Defendant from judgment entered 14 October 2011 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 September 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Carole Biggers, for the State.*

*Franklin E. Wells, Jr., for Defendant.*

STEPHENS, Judge.

*Procedural History and Evidence*

On 14 October 2011, a jury found Defendant Darryl Hester guilty of felonious larceny. Defendant then pled guilty to having attained the status of habitual felon. The trial court sentenced Defendant to 84—110 months imprisonment. From the judgment entered upon his convictions, Defendant appeals. For the reasons discussed herein, we dismiss.

The evidence at trial tended to show the following: Sin Wol Kang and Kyong Kang Wentworth hired Defendant for a small remodeling project at their beauty supply store, Beauty 101. In turn, Defendant enlisted Kevin King to assist with the project. On the evening of 15 August 2010, Wentworth noticed that four to six expensive hair extension pieces, together worth between $2,000 and $2,300, were missing from the store. Wentworth reported the theft to police on 16 August 2010. Officer Brian Long of the Charlotte-Mecklenburg Police Department met with Kang and Wentworth, who showed Long the store's surveillance video from 15 August 2010.

At trial, the State introduced and played for the jury a copy of the original surveillance video. In addition, Wentworth, Kang, and Long each testified to what they had seen on the original surveillance video. Kang and Wentworth testified that the original surveillance video showed both Defendant and King taking the hair extension pieces, while Long testified that he only saw Defendant putting the hair extension pieces under his shirt before exiting through the back door of the store. However, all three witnesses agreed that the copy of the surveillance video shown at trial had a much lower picture quality than the original surveillance video. The poor quality of the copy made it very difficult to tell whether Defendant or King had taken any hair extension pieces. Defendant did not object to the introduction of the copy or to any of the testimony about what the original surveillance video showed.

Long testified that, when he arrived at the store to view the surveillance video, King was there with Kang and Wentworth. King gave Long a written statement which was introduced at trial as Defense Exhibit 2. In the statement, King denied taking any hair extension pieces, but reported that he had seen Defendant take them. King did not testify. Defendant did not object to Long's testimony about King's statement.

Defendant testified on his own behalf. He denied having taken the hair extension pieces, but admitted making two restitution payments to Kang and Wentworth: one for $500 and another for $400. Defendant explained that, when he learned about the theft of the hair extension pieces, he felt sorry for Kang and Wentworth as a fellow small business owner. Defendant explained that he felt bad about having hired King, whom he blamed for the theft (although Defendant acknowledged that he had not seen King steal anything). Defendant testified that he had agreed and intended to pay Kang and Wentworth $2,000, but his difficult financial circumstances prevented this:

> I have no money. I don't have a bunch of money. Like I said, I called and apologized for my company, for the employees that work for my company. I did do that, but to just have $2,000 on hand, like I said, I don't have that. My fiancée, she's pregnant. I just had a seven-month-old daughter. We have four other kids, and we had just moved into our own apartment[.]

## *Discussion*

On appeal, Defendant makes three arguments: (1) that the trial court committed plain error in allowing the State's three witnesses to describe what they had seen in the original surveillance video, (2) that there existed a fatal variance between the facts alleged in the indictment and the evidence produced at trial, and (3) that Defendant's trial counsel provided ineffective assistance. After careful review, we dismiss Defendant's first and second arguments as not properly before this Court. As to Defendant's third argument, we dismiss without prejudice.

## *I. Testimony about the contents of the original surveillance video*

**[1]**  Defendant first argues that it was plain error for the trial court to allow Kang, Wentworth, and Long to testify about what they saw on the original surveillance video. We must dismiss this argument.

Because Defendant did not object to this testimony at trial, we review only for plain error. *State v. Lawrence,* ___ N.C. ___, ___, 723 S.E.2d 326, 333 (2012).

> The plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where the error is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.
>
> This Court and the United States Supreme Court have emphasized that *plain error review should be used sparingly, only in exceptional circumstances,* to reverse criminal convictions on the basis of unpreserved error[.]

*Id.* (citations, quotations marks, and brackets omitted) (alteration in original, second emphasis added). In sum, for a defendant to establish plain error, he must show not only error, but also prejudice. *Id.*

Here, while Defendant labels his argument as based on plain error and properly cites his burden under that standard of review, he does not argue prejudice. That is, Defendant does not explain how the challenged testimony, even if erroneously admitted, "tipped the scales" toward a guilty verdict or why the other evidence of his guilt was probably not sufficient standing alone to have resulted in a guilty verdict. Nor does Defendant compare the evidence of his guilt to that in other plain error cases in an effort to analogize or distinguish his case from others. As our Supreme Court has noted, an "empty assertion of plain error, without supporting argument or *analysis of prejudicial impact,* does not meet the spirit or intent of the plain error rule." *State v. Cummings,* 352 N.C. 600, 637, 536 S.E.2d 36, 61 (2000) (emphasis added), *cert. denied,* 532 U.S. 997, 149 L. Ed. 2d 641 (2001). In such cases, a defendant has waived appellate review of his argument, and the reviewing court should dismiss. *Id.; see also State v. Whitted,* ___ N.C. App. ___, ___, 705 S.E.2d 787, 793 (2011). By failing to provide this Court any analysis of the prejudicial impact of the challenged testimony, Defendant has waived appellate review of this issue.[1] Accordingly, we must dismiss.

## II. Defendant's Indictment

[2] Defendant next argues that a variance existed between the facts alleged in his indictment and the evidence produced at trial. We must dismiss this argument.

The question of variance between the indictment and the proof at trial is properly raised by a motion to dismiss in the trial court. *State v. Skinner,* 162 N.C. App. 434, 446, 590 S.E.2d 876, 885 (2004) (cita-

---

1. We note that, even were this argument not waived, any error here would not rise to the level of plain error. "It is well settled that all of the essential elements of larceny must be established by sufficient, competent evidence; and the essential facts can be proved by circumstantial evidence where the circumstance raises a logical inference of the fact to be proved and not just a mere suspicion or conjecture." *State v. Boomer,* 33 N.C. App. 324, 327, 235 S.E.2d 284, 286, *cert. denied,* 293 N.C. 254, 237 S.E.2d 536 (1977). Here, there was direct evidence of Defendant's guilt in the form of King's statement to Wilson that King saw Defendant take the hair extension pieces. Further, there was circumstantial evidence of Defendant's guilt in the form of his restitution payments totaling $900. Although Defendant testified that he made the payments because he felt sorry for the store's owners, the payments raise a logical inference that Defendant was actually the thief and felt guilty about his crime. This evidence would likely have led to Defendant's conviction, even without the testimony about the contents of the original surveillance video. Indeed, given the conflicting testimony about whether the original surveillance tape showed *Defendant and King* stealing the hair extension pieces (according to Wentworth and Kang) or showed *only Defendant* stealing them (according to Long), the jury likely treated this testimony with some skepticism.

tion omitted). In addition, the defendant must specifically assert variance as grounds for his motion to dismiss. *State v. Curry*, 203 N.C. App. 375, 384, 692 S.E.2d 129, 137, *disc. review denied and appeal dismissed*, 364 N.C. 437, 702 S.E.2d 496 (2010). Where the defendant fails to do so, he has waived his right to raise this issue on appeal. *Id.* at 385, 692 S.E.2d at 138. Further, "by presenting evidence after the close of the State's case, a defendant waives any previous motion to dismiss, and in order to preserve [the grounds for the motion to dismiss] for appeal, [the] defendant must renew his motion to dismiss at the close of all evidence." *State v. Boyd*, 162 N.C. App. 159, 161, 595 S.E.2d 697, 698 (2004).

Here, Defendant made a general motion to dismiss at the close of the State's evidence, but did not specifically raise the question of a variance. Defendant also failed to renew his motion to dismiss at the close of all evidence. Defendant has waived this issue for appellate review, and accordingly, we dismiss.

*III.  Ineffective Assistance of Counsel*

**[3]**  Finally, Defendant argues that he received ineffective assistance from his trial counsel. We dismiss this argument.

> The two-part test for ineffective assistance of counsel is the same under both the state and federal constitutions. A defendant must first show that his defense counsel's performance was deficient and, second, that counsel's deficient performance prejudiced his defense. Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*State v. Thompson*, 359 N.C. 77, 115, 604 S.E.2d 850, 876 (2004) (citations and quotation marks omitted), *cert. denied*, 546 U.S. 830, 163 L. Ed. 2d 80 (2005). However, this Court will only decide ineffective assistance claim brought on direct review

> when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appoint-

ment of investigators or an evidentiary hearing. Thus, when this Court reviews ineffective assistance of counsel claims on direct appeal and determines that they have been brought prematurely, we dismiss those claims without prejudice, allowing [the] defendant to bring them pursuant to a subsequent motion for appropriate relief in the trial court.

*Id.* at 122-23, 604 S.E.2d at 881.

Here, Defendant bases his claim of ineffective assistance on four alleged errors by his trial counsel: (1) failure to object to the admission of the copy of the surveillance video, (2) failure to object to testimony from Kang, Wentworth, and Long about what they saw on the original surveillance video, (3) failure to specifically raise variance in his motion to dismiss, and (4) failure to renew that motion at the close of all evidence. We note that Defendant did not provide the copy of the surveillance video introduced as an exhibit at trial, and a full and thorough review thereof appears necessary for proper review of Defendant's first ground for ineffective assistance of counsel. Accordingly, we dismiss Defendant's claim for ineffective assistance of counsel without prejudice to Defendant's right to file a motion for appropriate relief in the superior court.

DISMISSED in part; DISMISSED WITHOUT PREJUDICE in part.

Judge CALABRIA concurs.

Judge ELMORE dissents in part and concurs in part.

ELMORE, Judge, dissenting in part, concurring in part.

I respectfully disagree with the majority's decision to dismiss defendant's first argument on the basis that defendant failed to properly argue plain error on appeal. Furthermore, I believe that absent the erroneously admitted testimony there is a reasonable possibility that a different result would have been reached at the trial due to the prejudice to defendant.

In dismissing defendant's argument, the majority relies on *State v. Cummings* where our Supreme Court held that an "empty assertion of plain error, without supporting argument or analysis of prejudicial impact, does not meet the spirit or intent of the plain error rule." *State v. Cummings*, 352 N.C. 600, 637, 536 S.E.2d 36, 61 (2000).

However, in *Cummings* the defendant "provide[d] no explanation, analysis or specific contention in his brief supporting the bare assertion that the claimed error is so fundamental that justice could not have been done." *Id.* at 636, 536 S.E.2d at 61.

In the case *sub judice*, defendant has provided sufficient argument in support of his position that the trial court committed plain error in allowing the State's witnesses to describe what they had seen when they originally viewed the surveillance video. Defendant first asserts that the State failed to lay an adequate foundation for the admission of the video. In making this argument, defendant relies on the three prong test set forth in *State v. Collins*, ___ N.C. App. ___, 716 S.E.2d 255 (2011). Defendant next contends that the testimony proffered by the State's witnesses amounted to inadmissible lay opinion testimony that "invaded the province of the jury." Defendant cites *State v. Buie*, 194 N.C. App. 725, 671 S.E.2d 351 (2009) as controlling precedent and details the specific statements he believed to constitute inadmissible lay opinion testimony. Furthermore, defendant alleges that he was prejudiced by the admission of the opinion testimony because it was the "only evidence that [defendant] committed a crime." Accordingly, I deem it necessary to address defendant's argument.

i. Opinion testimony

I agree with defendant's argument that the testimony proffered by the State's witnesses constituted inadmissible lay opinion testimony.

As defendant did not object to the admission of the contested testimony at trial, he bears the burden of showing that the admission of the testimony was so prejudicial that "absent the error the jury probably would have reached a different verdict." *Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008) (citations and quotation marks omitted). Under Rule 701, a lay witness's testimony in the form of opinion or inference is permitted if it is rationally based on the perception of the witness and helpful to gain a clearer understanding of a fact in issue. *See* N.C. Gen. Stat. § 8C-1, Rule 701 (2012).

In *State v. Buie*, this Court concluded that the admission of the detective's testimony regarding the events depicted in two poor quality surveillance tapes was "inadmissible lay opinion testimony that invaded the province of the jury." *Buie*, 194 N.C. App. at 732, 671 S.E.2d at 355. However, we found its admission to be harmless for two reasons: (1) because there was other independent testimony

based on firsthand knowledge that supported the victim's claim, and (2) because the trial court repeatedly instructed the jury that they were charged with evaluating the images shown on the surveillance tape. *Id.* at 733-34, 671 S.E.2d at 356-57.

The case at hand can be distinguished from *Buie* because (1) the State did not call any witness who had perceived or had firsthand knowledge that defendant committed the larceny, and (2) the trial court did not instruct the jury that they were charged with interpreting the video. When asked if he saw defendant take anything from Beauty 101, Officer Long replied, "only on videotape." Officer Long testified that on the original video he could "clearly see [defendant] reach up, remove a pack of hair from the wall, place it kind of in the belly of his shirt and then walk outside the side door." I must note that "[t]his Court has upheld the admission of similar testimony by law enforcement officials only when their interpretations were based in part on firsthand observations." *Id.* at 732, 671 S.E.2d at 356. Accordingly, the admission of Officer Long's testimony was in error.

Wentworth and Kang's testimony also amounted to inadmissible lay opinion testimony. When Wentworth was asked if she saw defendant remove the hair extensions from the store, she replied, "[w]ith my bare eyes? . . . No." Kang was asked, "So what made you think [defendant] took your hair is what you saw on the [original] videotape?" She replied, "Yes." Neither Wentworth nor Kang personally perceived defendant take the hair pieces from Beauty 101; instead, each based her opinion of defendant's guilt solely on the alleged contents of the original video. Therefore, I assert that the trial court erred in admitting this testimony as well.

ii. Plain error

Having found that the trial court erred in admitting the lay opinion testimony, I now turn to the question of whether such error was prejudicial to defendant and had a probable impact on the jury's finding of guilt.

Defendant specifically asserts prejudice as he believes the opinion testimony was the only evidence tending to show his guilt. Defendant further argues that he was prejudiced by the trial court's failure to charge the jury with interpreting the video. I agree.

Here, the State maintains that it presented sufficient evidence to establish defendant's guilt notwithstanding the erroneous testimony. The State relies on (1) the fact that the jury viewed the surveillance

video on a large screen during deliberations, (2) Officer Long's testimony that King accused defendant of committing the larceny, and (3) defendant's payment of restitution.

However, I do not agree that above evidence in *toto* would have led to defendant's conviction absent the admission of the opinion testimony. The jury was able to view the surveillance video during deliberations; however, the trial court failed to charge them with interpreting the video. As such, the witnesses' interpretation of the video was likely highly persuasive, especially considering the fact that the copy entered into evidence was blurry. Furthermore, in *Buie* we emphasized the fact that the trial court "repeatedly" instructed the jury to interpret the video. *Id.* at 734, 671 S.E.2d at 356. In the case *sub judice*, the trial court never provided such instruction.

Moreover, Officer Long's testimony that King accused defendant of committing the larceny is not persuasive evidence of defendant's guilt. First, King did not testify at trial. Second, King was present during the commission of the larceny and, therefore, would naturally accuse defendant so as to avoid becoming a suspect himself. Finally, while defendant admitted to paying restitution, he testified that he did so because he was responsible for hiring King, whom he believed committed the larceny.

Additionally, it is important to note that Officer Long conducted no further investigation and gathered no physical evidence linking defendant to the crime. Thus, he relied solely on the images in the video when issuing a warrant for defendant's arrest. As such, without the admission of the opinion testimony, the State failed to establish beyond a reasonable doubt that defendant was guilty.

After careful review of the evidence, I conclude that defendant was prejudiced by the admission of the lay opinion testimony. Moreover, per N.C. Gen. Stat. § 15A-1443, defendant has shown a reasonable probability that the jury would have reached a different result had the testimony been excluded from trial. Accordingly, I would reverse the judgment of the trial court and order a new trial. I concur in all other aspects of the majority opinion.