IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-774

Filed 6 August 2024

Guilford County, Nos. 19 CRS 24225, 67599, 67601, 67750–51, 67844

STATE OF NORTH CAROLINA

v.

QUANTEZ LASHAY THOMAS

Appeal by defendant from judgments entered 19 August 2022 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 15 May 2024.

*Attorney General Joshua H. Stein, by Assistant Attorney General Benjamin T. Spangler, for the State.*

*Gilda C. Rodriguez for defendant-appellant.*

ZACHARY, Judge.

Defendant Quantez Lashay Thomas appeals from judgments entered upon a jury's verdicts finding him guilty of possession of a stolen motor vehicle, misdemeanor operation of a motor vehicle to elude arrest, two counts of breaking or entering a motor vehicle, two counts of misdemeanor larceny, two counts of financial transaction card theft, and attaining the status of a habitual felon. After careful review, we conclude that Defendant received a fair trial, free from prejudicial error.

## I.   Background

This case returns to this Court after Defendant received a new trial upon his first appeal. *See State v. Thomas* (*Thomas I*), 281 N.C. App. 722, 868 S.E.2d 176, 2022 WL 453450 (unpublished). The full procedural history of Defendant's first trial can be found in this Court's prior opinion in this matter. *See id.* at *1–*3. We recite here only those background and procedural facts relevant to the issues presented in this appeal.

The charges for which Defendant was tried arose from a series of vehicle-related crimes in and around High Point. On 17 January 2019, Kari Rhodes noticed that her Nissan Altima was missing from the parking lot of her apartment complex. On 21 January 2019, Angela Marion was leaving a gym with her husband when she noticed that the window on the passenger's side of their car had been broken, and her purse had been taken from the vehicle. Ms. Marion kept two credit cards in her wallet within her purse. When she called to cancel those credit cards, she learned that they had already been used, with hundreds of dollars of purchases having been charged to each card.

Officer Kaylyn Stewart[1] of the High Point Police Department ("HPPD") investigated the use of Ms. Marion's credit cards at several businesses. Among them was a Walmart on South Main Street in High Point. A Walmart loss-prevention

---

[1] By the time Officer Stewart testified at the trial from which appeal is taken, she had been promoted to the rank of Detective. For ease of reading and consistent with her rank at all times relevant to this appeal, we refer to her as "Officer Stewart" in this opinion.

associate retrieved surveillance video footage from the evening of 21 January 2019—when Ms. Marion's card was used—and captured some still photographs from the footage. Officer Stewart later testified about the appearance of the suspect in the surveillance video footage, including, among other details, that the suspect was wearing a camouflage jacket.

On 25 January 2019, Alondra McGill was cleaning an office with her aunt, Teresa Perez. In her van, Ms. Perez had a pair of Nike sneakers that had been delivered to her home for Ms. McGill. After the women finished cleaning, they went to Ms. Perez's van and noticed several items missing, including the Nike sneakers, Ms. Perez's purse, and some cleaning supplies. Ms. McGill would later testify that she never saw the Nike sneakers, that she never gave anyone else permission to take the shoes, and that Ms. Perez had never given anyone permission to enter her van.

HPPD officers investigating the breaking or entering and larceny from Ms. Perez's van obtained surveillance video footage showing Ms. Perez's van in the adjacent parking lot. After reviewing the footage, which showed a man entering Ms. Perez's van and removing items from it, the officers identified Defendant as a suspect.

On 6 February 2019, an HPPD officer recognized Defendant driving a Nissan Altima. The officer initiated a traffic stop by activating the lights and siren, but Defendant sped away in excess of the speed limit, and the officer did not pursue him. The officer found the Altima later that night, apparently abandoned. Upon further investigation, he confirmed by the VIN number that the Altima had been reported

stolen by Ms. Rhodes's husband. Officer Stewart responded to the scene of the abandoned Altima and discovered, *inter alia*, a pair of Nike shoes and a camouflage jacket inside the car. Once her car was recovered, Ms. Rhodes did not recall if anything was missing from it, but she noticed several items inside that had not previously been present in the car, including the coat and the shoes.

On 22 July 2019, a Guilford County grand jury returned true bills of indictment, charging Defendant with the following offenses: three counts of obtaining property by false pretenses; three counts of financial transaction card theft; two counts of breaking or entering a motor vehicle; felony larceny; possession of a stolen motor vehicle; felonious fleeing to elude arrest with a motor vehicle; three counts of misdemeanor larceny; and attaining the status of habitual felon. On 11 February 2020, the matter came on for trial. *Id.* at *3. The jury found Defendant guilty of 13 of the charged offenses, and the trial court consolidated the convictions into two judgments.

In the first judgment, the trial court consolidated the felony larceny with convictions for breaking or entering a motor vehicle, possession of a stolen motor vehicle, and two counts of obtaining property by false pretenses; in this judgment, the trial court sentenced Defendant as a prior record level III offender with habitual felon status to a term of 67 to 93 months' imprisonment in the custody of the North Carolina Division of Adult Correction. In the second judgment, the court consolidated the second breaking or entering a motor vehicle conviction with the third conviction

of breaking or entering a motor vehicle, three counts of financial transaction card theft, two counts of misdemeanor larceny, and misdemeanor fleeing to elude arrest with a motor vehicle; in this judgment, the trial court sentenced Defendant as a prior record level III offender with habitual felon status to a consecutive term of 26 to 44 months.[2] Defendant appealed, and on 15 February 2022 this Court filed its opinion in *Thomas I*, in which we ordered a new trial. *Id.* at *5.

On remand, the matter came on for a new trial on 15 August 2022. The State's evidence included, *inter alia*, surveillance video footage of Ms. Perez's van during the incident in question and testimony by Officer Stewart, in which she identified Defendant as the individual in that footage. At the close of the State's evidence, the State took a voluntary dismissal of one count of misdemeanor larceny and two counts of obtaining property by false pretenses. The trial court then granted Defendant's motion to dismiss in part, as to one count of financial transaction card theft, and further ruled that the State could not proceed with the felony larceny charge but could prosecute the offense as an additional count of misdemeanor larceny.

The jury generally found Defendant guilty as charged, except for finding him guilty of misdemeanor rather than felony operation of a motor vehicle to elude arrest and finding him not guilty of the count of misdemeanor larceny that had been initially charged as a felony. The jury also found that Defendant had attained the status of a

---

[2] The trial court made a clerical error in its judgments after the first trial, but in light of our disposition, we did not reach that issue in *Thomas I. Id.* at *3 n.1.

habitual felon.

On 19 August 2022, the trial court again consolidated the various convictions into two judgments. In the first judgment, the trial court consolidated the possession of a stolen motor vehicle conviction with one conviction for breaking or entering a motor vehicle, and attaining habitual felon status, and sentenced Defendant as a prior record level III offender to a term of 67 to 93 months' imprisonment. In the second judgment, which included the other conviction for breaking or entering a motor vehicle among the remaining convictions, the trial court accepted the State's argument that all of the elements of the breaking or entering conviction were included in one of Defendant's prior offenses and added an additional point to Defendant's prior record level, raising him to a prior record level IV offender. Accordingly, the trial court sentenced Defendant as a prior record level IV offender with habitual felon status to a term of 30 to 48 months' imprisonment.

Defendant gave notice of appeal in open court.

## II.    Discussion

Defendant contends that the trial court: (1) "erred when it denied [Defendant's] motion to dismiss the breaking [or] entering a motor vehicle and misdemeanor larceny charges" relating to Ms. Perez "because the State presented insufficient evidence of lack of consent"; (2) "committed plain error . . . when it allowed the lay witness opinions of Officer Stewart as to what and whom surveillance videos and photographs depicted"; and (3) "erred when it sentenced [Defendant] to a sentence

more severe than the prior vacated sentence in violation of N.C. Gen. Stat. § 15A-1335."

## A. Motion to Dismiss

Defendant first argues that the trial court erred by denying his motion to dismiss the charges in 19 CRS 67750: one count each of breaking or entering a motor vehicle and misdemeanor larceny, both relating to Ms. Perez's vehicle. Defendant alleges that the State "failed to present sufficient evidence of an essential element of the charges"—namely, "lack of consent"—because Ms. Perez did not testify at trial. We disagree.

### 1. Standard of Review

"We review de novo a trial court's denial of a motion to dismiss a criminal charge for insufficient evidence." *State v. Gibson*, 277 N.C. App. 623, 624, 859 S.E.2d 253, 254 (2021). When conducting de novo review, this Court "consider[s] the matter anew and freely substitut[es] our own judgment for that of the trial court." *State v. Edgerton*, 266 N.C. App. 521, 532, 832 S.E.2d 249, 257 (2019), *disc. review denied*, 375 N.C. 496, 847 S.E.2d 886 (2020).

"In reviewing a motion to dismiss based on insufficiency of the evidence, our inquiry is whether there is substantial evidence (1) of each essential element of the offense charged, and (2) of defendant's being the perpetrator of such offense." *Id.* at 532, 832 S.E.2d at 257–58 (cleaned up). "On review of the denial of a motion to dismiss, this Court is concerned only about whether the evidence is sufficient for jury

consideration, not about the weight of the evidence." *State v. Baskin*, 190 N.C. App. 102, 108, 660 S.E.2d 566, 571 (cleaned up), *disc. review denied*, 362 N.C. 475, ___ S.E.2d ___ (2008).

The trial court reviews a defendant's motion to dismiss "to determine whether there is substantial evidence of each element of the charged offense. Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *Gibson*, 277 N.C. App. at 624, 859 S.E.2d at 254 (cleaned up). "The evidence must be viewed in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *Id.* at 624, 859 S.E.2d at 255 (cleaned up). Additionally, "where there is substantial evidence of each element of the offense charged, the fact that there is only a modicum of physical evidence, or inconsistencies in the evidence, is for the jury's consideration." *State v. Jackson*, 162 N.C. App. 695, 697, 592 S.E.2d 575, 577 (2004).

"The test for sufficiency of the evidence is the same whether the evidence is direct or circumstantial or both. Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455 (cleaned up), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000).

> If the evidence presented is circumstantial, the court must consider whether a reasonable inference of [the] defendant's guilt may be drawn from the circumstances. Once the court decides that a reasonable inference of [the] defendant's guilt may be drawn from the circumstances,

then it is for the jury to decide whether the facts, taken singly or in combination, satisfy it beyond a reasonable doubt that the defendant is actually guilty.

*Id.* (emphasis omitted) (cleaned up).

### 2. Analysis

Regarding the denial his motion to dismiss the charges of breaking or entering a motor vehicle and larceny, Defendant's sole argument of error by the trial court is that the State failed to present any evidence regarding the lack of Ms. Perez's consent.

The lack of consent of the owner is an essential element of both offenses. The elements of the offense of breaking or entering a motor vehicle are: "(1) . . . a breaking or entering by the defendant; (2) without consent; (3) into a motor vehicle; (4) containing goods, wares, freight, or anything of value; and (5) with the intent to commit any felony or larceny therein." *Jackson*, 162 N.C. App. at 698, 592 S.E.2d at 577 (emphasis omitted); *see also* N.C. Gen. Stat. § 14-56 (2023). "The essential elements of larceny are that the defendant (1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of his property permanently." *State v. Campbell*, 373 N.C. 216, 221, 835 S.E.2d 844, 848 (2019) (cleaned up).

The crux of Defendant's argument is that "there was no testimony from the alleged owner of the vehicle regarding lack of consent." As to the breaking or entering charge, Defendant further asserts that "there was no evidence of locked doors, broken windows, or any physical evidence of a forced entry that indicated a lack of consent

to entry into the van." As to the larceny charge, Defendant contends that "the State failed to present sufficient evidence that the cleaning products were taken without the owner's consent." Rather, Defendant alleges that the testimony of Ms. McGill was "insufficient to establish the lack of consent element required for the larceny charge" because she "was not the owner of the cleaning products and she was not in possession of the cleaning products when they were alleged to have been taken."

The State responds that there was sufficient circumstantial evidence from which the jury could infer that Defendant lacked Ms. Perez's consent to break or enter into her car or to take her property. As stated above, "[c]ircumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455 (citation omitted). Indeed, this Court has previously recognized that in some cases, the "very nature" of the circumstances "gives rise to an inference that the owner of the vehicle did not consent to [the] defendant's conduct" in breaking or entering it. *State v. Jacobs*, 202 N.C. App. 350, 352, 688 S.E.2d 112, 113–14, *disc. review denied*, 364 N.C. 328, 701 S.E.2d 243 (2010).

The State suggests that "Defendant's knowledge that he lack[ed] consent to enter [Ms. Perez's] vehicle can be inferred by his demeanor[,]" as exhibited in the parking lot surveillance video footage of the incident. In the recording, Defendant drives up to Ms. Perez's van and turns off his headlights before he parks his vehicle next to hers. Defendant exits his vehicle and walks in front of Ms. Perez's van, looking

into the nearby storefront, then casually walks back to the van. With his back to the storefront, obscuring the view of his hand, Defendant surreptitiously tries to open the van's side door. Upon discovering that the van is unlocked, he takes another glance toward the storefront as he opens the van door and leans inside the van. Defendant quickly removes a box with the Nike logo from the van, again looking toward the storefront and around the parking lot as he closes the van door and puts the Nike box in the back seat of his own car. Defendant then returns to the van and, while continually checking the storefront, opens the front passenger door, gets in the seat, and closes the door. As Defendant rifles through the contents of the van, occasionally putting things in his pockets, he rarely goes more than a second without looking up at the storefront or around the parking lot. He exits the van, keeping his eyes on the storefront as he checks that the passenger door is closed by pressing on it with his hip. He then walks around to the trunk, which he opens, and makes several trips removing items—including cleaning supplies—from the trunk and putting them into the back seat of his vehicle. Finally, Defendant reenters his vehicle, backs out of the parking spot, and only turns on his car's headlights as he drives away.

Even though the State did not present direct evidence of lack of consent in the form of testimony by Ms. Perez, this video, which was published to the jury several times, constituted sufficient circumstantial evidence to survive Defendant's motion to dismiss. Specifically, when viewed in the light most favorable to the State, the surveillance footage would permit "a reasonable inference of [D]efendant's guilt [to]

be drawn from the circumstances, [and] it [was thus] for the jury to decide whether the facts, taken singly or in combination, satisf[ied] it beyond a reasonable doubt that . . . [D]efendant is actually guilty." *Fritsch*, 351 N.C. at 379, 526 S.E.2d at 455 (cleaned up). Accordingly, Defendant's argument is overruled.

**B. Lay Opinion Testimony**

Defendant next argues that the trial court committed plain error by "allow[ing] the lay witness opinions of Officer Stewart as to what and whom surveillance videos and photographs depicted." Again, we disagree.

### 1. *Standard of Review*

Defendant acknowledges that he did not object at trial to the admission of the testimony that he now challenges on appeal, and so he specifically and distinctly contends that the admission of this testimony amounted to plain error. *See* N.C.R. App. P. 10(a)(4). To show plain error, "a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (cleaned up). "Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings . . . ." *Id.* (cleaned up).

### 2. *Analysis*

Defendant asserts that the admission of testimony by Officer Stewart, identifying Defendant as the individual in the Walmart surveillance video footage and in still photographs derived from the footage, amounts to plain error. Under Rule 701 of the North Carolina Rules of Evidence, a non-expert witness's "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C. Gen. Stat. § 8C-1, Rule 701.

This Court has recognized that lay opinion testimony identifying a criminal defendant in a photograph or videotape may be admissible "where such testimony is based on the perceptions and knowledge of the witness, the testimony would be helpful to the jury in the jury's fact-finding function rather than invasive of that function, and the helpfulness outweighs the possible prejudice to the defendant from admission of the testimony." *State v. Buie*, 194 N.C. App. 725, 730, 671 S.E.2d 351, 354 (citation omitted), *disc. review denied*, 363 N.C. 375, 679 S.E.2d 135 (2009). Defendant cites *Buie* and *State v. Belk* as examples of a trial court admitting testimony that oversteps this guidance. *See id.* at 732, 671 S.E.2d at 355 (the trial court abused its discretion in admitting testimony by a law enforcement officer who "offered his opinion, at length, about the events depicted in . . . surveillance tapes, concluding that the video corroborated the [witness]'s testimony."); *see also State v. Belk*, 201 N.C. App. 412, 418, 689 S.E.2d 439, 443 (2009) ("[T]here was no basis for

the trial court to conclude that the officer was more likely than the jury correctly to identify [the d]efendant as the individual in the surveillance footage."), *disc. review denied*, 364 N.C. 129, 695 S.E.2d 761 (2010).

However, Defendant's reliance upon *Buie* and *Belk* is misplaced, as neither case involved plain-error review. Indeed, the *Buie* Court even concluded that the error was harmless because there was "sufficient evidence to support the jury's decision, independent from the testimony" of the law enforcement officer. 194 N.C. App. at 734, 671 S.E.2d at 357. So too, here.

Even assuming, *arguendo*, that the trial court erred, "after examination of the entire record," Defendant has not shown that "the error had a probable impact on the jury's finding that . . . [D]efendant was guilty." *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (cleaned up). In light of the "overwhelming" evidence—direct and circumstantial—in this case, "[D]efendant cannot show that, absent the error, the jury probably would have returned a different verdict." *Id.* at 519, 723 S.E.2d at 335. Moreover, Defendant has not shown that this is "the exceptional case" in which the alleged error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* at 518, 723 S.E.2d at 334 (cleaned up). Therefore, Defendant's argument is overruled.

## C. Sentencing

Lastly, Defendant argues that the trial court erred by sentencing him in violation of N.C. Gen. Stat. § 15A-1335 to a sentence more severe than the prior

vacated sentence. We disagree.

### 1. *Standard of Review*

This Court reviews de novo alleged statutory errors regarding sentencing issues, as such errors "are questions of law[.]" *State v. Allen*, 249 N.C. App. 376, 379, 790 S.E.2d 588, 591 (2016) (citation omitted).

### 2. *Analysis*

In its second consolidated judgment, the trial court sentenced Defendant—a prior record level IV offender with habitual felon status—to a term of 30 to 48 months' imprisonment. Because this sentence is more severe than the sentence in the second consolidated judgment from *Thomas I*, Defendant alleges that the trial court violated N.C. Gen. Stat. § 15A-1335. Defendant thus requests that this Court vacate the second consolidated judgment and remand for resentencing.

Section 15A-1335 provides, in pertinent part:

> When a conviction or sentence imposed in superior court has been set aside on direct review or collateral attack, the court may not impose a new sentence for the same offense, or for a different offense based on the same conduct, which is more severe than the prior sentence less the portion of the prior sentence previously served.

N.C. Gen. Stat. § 15A-1335.

Defendant contends that "[t]he sole exception to N.C. Gen. Stat. § 15A-1335, and the only circumstance in which a higher sentence will be allowed on resentencing, is when a statutorily mandated sentence is required by the General Assembly." *State*

*v. Cook*, 225 N.C. App. 745, 747, 738 S.E.2d 773, 775 (citation omitted), *disc. review denied*, 367 N.C. 212, 747 S.E.2d 249 (2013). In support of this proposition, Defendant emphasizes that this Court has stated that "[a] trial court *may* add one point if all the elements of the present offense are included in any prior offense." *State v. Posner*, 277 N.C. App. 117, 122, 857 S.E.2d 870, 874 (2021) (emphasis added) (cleaned up); *accord* N.C. Gen. Stat. § 15A-1340.14(b)(6). Defendant argues that the additional point, which raised his prior record level to IV, was not "statutorily mandated" and therefore his sentence does not fall within the "sole exception" to § 15A-1335. *Cook*, 225 N.C. App. at 747, 738 S.E.2d at 775 (citation omitted).

First, Defendant bases his argument solely on the proposition that the trial court's decision to add a point under § 15A-1340.14(b)(6) is discretionary. In his reply brief, Defendant asserts that the State has failed to cite "a statute or case that states the additional point is mandatory when applicable. In fact, the language of N.C. Gen. Stat. § 15A-1340.14(b)(6), does not include 'shall' or 'must.'" True though that assertion may be, the statute likewise does not include any discretionary terms, such as "may." Rather, § 15A-1340.14(b)(6) merely states: "Points are assigned as follows: . . . . If all the elements of the present offense are included in any prior offense for which the offender was convicted, whether or not the prior offense or offenses were used in determining prior record level, 1 point." N.C. Gen. Stat. § 15A-1340.14(b)(6).

Contrary to Defendant's assertion, a close reading of *Posner* reveals that this Court used the word "may" in a discussion of whether the trial court erred when it

used the same felony prior record level worksheet to determine the defendant's prior record level for five separate judgments, when only two of the judgments involved offenses that shared elements with his prior offenses. *Posner*, 277 N.C. App. at 122, 857 S.E.2d at 874. In light of the plain language of the statute that provides a straightforward directive regarding the addition of the "extra" point in question, the passing use of the term "may" in *Posner* cannot reasonably read as Defendant suggests. Indeed, nothing in the plain text of § 15A-1340.14(b)(6) suggests that the assignment of an additional point is not mandatory if the trial court determines that its conditions are satisfied. It would strain credulity to suggest that any of the other subsections of § 15A-1340.14(b) providing for the assignment of points would be discretionary, and Defendant cites no authority to suggest why subsection (6) would be an exception.

Here, the trial court assessed an additional point to Defendant's prior record level, which raised his prior record level from III to IV. Notably, Defendant does not challenge the merits of the addition of this point on appeal; he merely challenges whether the point was "statutorily required" as part of his challenge to his sentence under § 15A-1335. Yet, "where the trial court is required by statute to impose a particular sentence . . . § 15A-1335 does not apply to prevent the imposition of a more severe sentence." *State v. Powell*, 231 N.C. App. 129, 133, 750 S.E.2d 899, 902 (2013) (citation omitted).

The trial court sentenced Defendant to a term of 30 to 48 months'

incarceration, at the bottom of the presumptive range under our sentencing guidelines. *See* N.C. Gen. Stat. § 15A-1340.17(c)(4). In the absence of any mitigating factors, the trial court was not statutorily authorized to impose any lesser sentence than the sentence entered. Accordingly, N.C. Gen. Stat. § 15A-1335 "does not apply to prevent the imposition of a more severe sentence." *Powell*, 231 N.C. App. at 133, 750 S.E.2d at 902 (citation omitted). Defendant's argument is overruled.

## III. Conclusion

For the foregoing reasons, we conclude that Defendant received a fair trial, free from prejudicial error.

NO ERROR.

Chief Judge DILLON and Judge ARROWOOD concur.