An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-1111

Filed 3 December 2025

Pitt County, No. 22CR260632-730

STATE OF NORTH CAROLINA

v.

CAMERON RANDELL WHICHARD

Appeal by Defendant from judgment entered 28 September 2023 by Judge William D. Wolfe in Pitt County Superior Court. Heard in the Court of Appeals 27 August 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Jonathan D. Jones, for the State.*
>
> *W. Michael Spivey for the Defendant.*

WOOD, Judge.

Cameron Randell Whichard ("Defendant") appeals from judgment entered 28 September 2023 upon a jury conviction of robbery with a dangerous weapon. Defendant makes four arguments on appeal. First, the trial court erred in admitting screenshot photos of video evidence for the purpose of illustrating testimony because

they did not depict events the officer witnessed firsthand. Second, the trial court erred in admitting exhibits without proper authentication. Third, the trial court erred by allowing an officer to testify as a lay witness as to what was happening in a video where the officer had no firsthand knowledge of the events. Fourth, the trial court erred by allowing lay witness opinion testimony identifying Defendant in photos when the jury was just as capable of making the comparison. For the reasons stated herein, we hold Defendant received a fair trial free from error.

## I.     Factual and Procedural Background

On 29 July 2022, at approximately 10 p.m., Michael Smith ("Smith") left a girl's house and rode his scooter downtown to sit on a park bench for the night. On the way, Smith noticed a "truck" with tinted windows drive slowly past him but didn't think anything of it at first. While at the bench, Smith looked around for his glasses that he thought he had left there the night before. When he returned to his scooter, he found that "a truck had pulled around in front of it." At trial, Smith clarified that by "truck" he meant a "SUV-like kind. It was a Ford Escape or something like that[]" and it was "red like burgundy."

Smith further testified that two men, one with a gun, jumped out of the vehicle and said, "[y]ou know what time it is" then grabbed his bag and belongings. Smith described the gun as "[s]omething like a 9 or something or 45 or something like that. It was one of them kind. An automatic like. It wasn't no revolver or nothing." Smith testified both men took his belongings, not just one of them, and when they noticed a

car coming, they said, "[s]hoot him, shoot him," before running back to their vehicle and driving off. Once they left, Smith rode his scooter to the police station.

Officer Marvin Wigfall ("Officer Wigfall") of the Greenville Police Department was on duty the night of the incident and took a report from Smith. Officer Wigfall, the first officer to testify at trial, stated that while he spoke with Smith, other officers reviewed surveillance camera footage and patrolled the area for a vehicle like Smith described.

Officer Wigfall testified that there are many city cameras mounted on light poles and traffic poles and as a police officer he has access to the camera footage. Officer Wigfall reviewed the camera footage from his department-issued computer in his patrol car on the night of the incident and testified that he could view footage live or view playback that was saved for thirty days. Officer Wigfall testified that he accessed footage from a camera located at "1st and Evans street. The quad camera that's on the light pole." Officer Wigfall testified he watched playback footage of what he believed depicted the robbery incident. *After watching* the playback footage, Officer Wigfall took still photos and submitted a request to the police department to save the camera footage, meaning the footage is downloaded or preserved by the police department.

After requesting the footage be saved, Officer Wigfall "used the snipping tool on [his] computer and took still shots of the vehicle and the incident that took place" to "create some photographs" of "[a] red SUV at Town Commons[,] Mr. Smith and

some sort of altercation." The photos were attached to Officer Wigfall's report.

Further, Officer Wigfall testified he was able to use the city cameras to "track vehicles, for lack of better words, from where they started to where they finished. And I was able to backtrack that SUV and find it on another city camera[,]" and "I tracked the vehicle. Just replayed the video and I'm able to see what I believe is the same red SUV parked on the road with two individuals standing around it. I took a still screen shot of that as well." The State asked Officer Wigfall if he included the screenshot photos in the case file and attached them to his report, to which Defendant asked, "to be heard as to an objection." After the jury exited the courtroom, voir dire was conducted and the trial court first recapped the bench conference for the record by stating:

> Counsel objected to a question asked by the State about the substance of what the victim told [Officer Wigfall]. . . . The State's proper reason for the evidence was [for] corroborative purposes. The Court and defense counsel made the observation that it cannot be corroborative at this point because the witness has not testified. The State indicated that the witness - - the victim Mr. Smith is an intended witness of the State. And the court therefore since it believes it would be admissible for corroborative purposes if the jury so finds overruled the objection, notified the State that if for some reason Mr. Smith does not testify that the best possible report at that point for the State is a mistrial. And notified counsel that it would give the instruction relating to corroboration or impeachment by prior statement at the conclusion of the case.

The State indicated it would call witnesses who would refer to these exhibits for the "identification of the defendant as the perpetrator of these crimes." No

exhibits were admitted during Officer Wigfall's initial testimony. Subsequent to Officer Wigfall, Smith and then Officer Chad Bowen ("Officer Bowen") of the Greenville Police Department testified. State Exhibit 5 was admitted during Officer Bowen's testimony. State Exhibits 1, 2, and 3 were admitted when Officer Wigfall resumed his testimony following Smith and Officer Bowen. The jury also heard testimony from other officers regarding their roles in the investigation.

On 28 September 2023, a jury found Defendant guilty of robbery with a dangerous weapon, a class D felony. The trial court found Defendant to be a prior record level five and sentenced him to 111 to 146 months of imprisonment. Defendant gave oral notice of appeal in open court.

## II.    Analysis

Defendant makes four arguments on appeal. First, Defendant argues the trial court erred by determining the State had properly authenticated Exhibits 1, 2, 3, and 5. Second, the trial court abused its discretion by admitting State Exhibits 1, 2, 3, and 5 without proper authentication. Third, the trial court erred by permitting Officer Bowen to testify to his opinion about the events depicted within State Exhibit 5. Fourth, the trial court erred by allowing Officer Justin White ("Officer White") of the Greenville Police Department to offer opinion testimony that Defendant was the individual depicted in State Exhibits 1 and 5.

### A. Authentication and Admission of Evidence

Defendant argues the trial court erroneously ruled State Exhibits 1, 2, 3, and

5 to have been properly authenticated. State Exhibits 1, 2, and 3 are screenshot photos made from the city camera video footage. State Exhibit 5 is a DVD containing multiple video clips from the city cameras.

The standard of review for authentication of evidence is *de novo. State v. Clemons*, 274 N.C. App. 401, 409, 852 S.E.2d 671, 676 (2020). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.* (quoting *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008)).

This Court reviews whether a trial court properly admitted evidence for an abuse of discretion. *State v. Steele*, 286 N.C. App. 136, 140, 879 S.E.2d 387, 390 (2022). "An abuse of discretion will be found only when the trial court's decision was so arbitrary that it could not have been the result of a reasoned decision." *Id.* (quoting *Brown v. City of Winston-Salem*, 176 N.C. App. 497, 505, 626 S.E.2d 747, 753 (2006)). "Rule 901 of our Rules of Evidence requires that as a condition precedent to admissibility evidence must be authenticated or identified sufficient to support a finding that the matter in question is what its proponent claims." *Id.*

Photographs, videos, and other photographic representations may be introduced as substantive evidence upon laying a proper foundation; however, a party is not prohibited from introducing such materials "*solely for the purpose of illustrating the testimony of a witness.*" N.C. Gen. Stat. § 8-97 (2023) (emphasis added). "Photographs are admissible for illustrative purposes if they fairly and accurately

illustrate the subject of a witness's testimony." *State v. Little*, 253 N.C. App. 159, 168, 799 S.E.2d 427, 433 (2017) (citing *State v. Alston*, 91 N.C. App. 707, 713, 373 S.E.2d 306, 311 (1988)). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." N.C. Gen. Stat. § 8C-1, Rule 901(a) (2023).

Video surveillance footage has been found to be properly authenticated when a witness testifies "that the recording process is reliable and that the video introduced at trial is the same video that was produced by the recording process . . . ." *State v. Jones*, 288 N.C. App. 175, 187-88, 884 S.E.2d 782, 793 (2023) (quoting *State v. Snead*, 368 N.C. 811, 814, 783 S.E.2d 733, 736 (2016)); *see also State v. Fleming*, 247 N.C. App. 812, 817-18, 786 S.E.2d 760, 765-66 (2016). "[I]t is sufficient for the party offering the videotape simply to satisfy the trial court that the item is what it purports to be and has not been altered." *Snead*, 368 N.C. at 815, 783 S.E.2d at 737 (cleaned up). When there is no argument that a video has been altered, it is sufficient for a witness to state that the video exhibit displayed at trial is the same as when the witness saw it originally. *Id.* at 816, 783 S.E.2d at 737. Even when it is found that surveillance video is not properly authenticated, a defendant must show that they were prejudiced by the error. *Jones*, 288 N.C. App. at 189, 884 S.E.2d at 794.

### 1. *State Exhibits 1, 2, and 3*

Defendant argues State Exhibits 1, 2, and 3, screenshot photos made from the

city camera video footage, were not properly authenticated and further could not have been used to illustrate Officer Wigfall's testimony because they were unrelated to the subject of his testimony. In contrast, the State argues the screenshot images were properly authenticated and used to illustrate the events Officer Wigfall saw on the city camera video footage system and the investigative steps taken to "locate the suspects using the automated video product of the Milestone system."

Prior to the admission of State Exhibits 1, 2, and 3, the trial court, State, and Defendant took part in lengthy discussion during Officer Wigfall's initial testimony over the screenshot photos and what they could be used to illustrate. The following discussion on the introduction of the screenshot photographs took place outside the presence of the jury following an objection by Defendant:

> THE COURT: Well, then I don't see any problem with you having [Officer Wigfall] identify the pictures. He's already described how they were created. As far as being introduced for illustrative purposes, [Officer Wigfall] doesn't have any personal knowledge of the things they illustrate. You may get there with another witness as you've already alluded to. But I would say that the [defendant's] objection about them being introduced for that purpose right now would be sustained unless and until you can establish that someone with knowledge of what they illustrate can testify. Do you understand what I'm saying?
>
> [THE STATE]: Yes, sir.
>
> THE COURT: I will permit you to ask your foundational questions. I think that's appropriate. And any further foundational questions you have about the videotape as well. But - - and I think what [Officer Wigfall] has testified

to as I've said before [] is critical evidence on foundation and it establishes at least part. But for illustrative purposes I'd have to be comfortable with what was actually introduced with knowledge of the things that they illustrate. So they can say it fairly and accurately illustrates those events. All right. Anything further on this particular issue?

[DEFENDANT]: No, sir.

THE COURT: I think [for] formalities sake, the objection is overruled at this point because the State hasn't moved to introduce it or even mark or identified it in front of the jury. That's the court position when we get to that part of the case.

The trial court permitted the State to ask Officer Wigfall questions about the screenshot photos including how he made them, what he believed they depicted, whether he was familiar with the location depicted in the photos, and whether the photos accurately depicted the videos. Specifically, Officer Wigfall stated the screenshot photos were "[w]hat [he] believe[d] was the incident and what [he] believed to be the vehicle involved." Additionally, Officer Bowen testified to the accuracy and reliability of the city camera system. Ultimately, the trial court admitted State Exhibits 1, 2, and 3 for illustrative purposes subsequent to Smith's testimony and the admission and publication of State Exhibit 5 during Officer Bowen's testimony.

The screenshot photos were used to illustrate Officer Wigfall's testimony and explain his investigative process. The screenshot photos illustrated moments he saw on the city camera footage the night of the incident. The screenshot photos were not

used to prove the identity of Defendant or for any other substantive purpose. Thus, Officer Bowen's testimony that the city camera system was reliable and Officer Wigfall's testimony that the screenshot photos accurately depicted the city camera footage he viewed on the night of the incident and were the same at trial as on the night he created them is sufficient to properly authenticate the photos. *See Snead*, 368 N.C. at 815-16, 783 S.E.2d at 737. We hold State Exhibits 1, 2, and 3 were properly authenticated and admitted as illustrative evidence.

### 2. *State Exhibit 5*

Defendant next argues State Exhibit 5, a DVD containing multiple video clips from Greenville City cameras, was not properly authenticated because Officer Bowen did not witness the events depicted in the videos first hand.

At trial, Officer Bowen testified to his familiarity with the city camera systems, stating that he utilizes either the live or playback function on almost a daily basis in the course of his investigations. In explaining how to save or download video footage from the city cameras, Officer Bowen stated,

> there's a system where we would submit to our IT or through our police department and say, Hey, that is the camera that we need and these are the times that we need saved. And these are saved and then if they're needed they're downloaded on the disk, so that way it doesn't purge out. After so long the video will be there for evidentiary purposes.

Officer Bowen testified that all of the saved footage from the night of the incident appeared the same at trial as when he first viewed it. Prior to the camera footage

being introduced, Officer Bowen testified they were able to determine the location where the incident occurred and city cameras had recorded the incident. After identifying the incident captured by the city camera, they worked in reverse to determine from where the vehicle, identified as a burgundy Nissan Pathfinder, had come. Officer Bowen testified that by this process they were able to see video of two men getting into the vehicle.

Officer Bowen testified the video would be helpful to show what he was referring to and to point to things he was referencing. Further, Officer Bowen explained that he had watched the camera footage and that he found it to be consistent with the footage he initially observed on the night of the incident. The State also presented Officer Bowen with the physical DVD marked as State Exhibit 5 which Officer Bowen was able to identify as associated with this case based on its label. The label on State Exhibit 5 contained the case numbers associated with the case. Officer Bowen then testified that the video footage displayed all the different intersections described in his report for the night in question and further, State Exhibit 5 appeared to be the city camera footage he had viewed the night of the incident. Thereafter, State Exhibit 5 was admitted into evidence and published to the jury over Defendant's objections. Because the video clips depicted as State Exhibit 5 were used to illustrate Officer Bowen's investigative process, his testimony that the video clips derived from a reliable camera system and appeared the same as on the night of the incident is sufficient to properly authenticate the exhibit. *Id.* We

hold State Exhibit 5 was properly authenticated and admitted as illustrative evidence.

As discussed *supra*, State Exhibits 1, 2, 3, and 5 were all properly authenticated prior to being admitted as illustrative evidence. Therefore, the trial court did not abuse its discretion by admitting State Exhibits 1, 2, 3, and 5.

**B. Lay Witness Opinion Testimony**

This Court reviews the admission of opinion testimony by a lay witness under an abuse of discretion standard. *State v. Faulkner*, 180 N.C. App. 499, 512, 638 S.E.2d 18, 27 (2006).

> If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.

N.C. Gen. Stat. § 8C-1, Rule 701 (2023). When this Court determines a trial court erred by allowing lay witness opinion testimony to be admitted as evidence, we then must determine whether the error prejudiced the defendant. *State v. Buie*, 194 N.C. App. 725, 733, 671 S.E.2d 351, 356 (2009).

### 1. *Officer Bowen – State Exhibit 5*

Defendant argues the trial court erred by allowing Officer Bowen to testify to his opinion of what the city camera video clips contained within State Exhibit 5 depicted because the jury viewed the footage and was capable of making their own

conclusion. Further, Defendant argues Officer Bowen's testimony was prejudicial because he was a highly experienced officer and the jury was likely to have given his opinion significant weight.

The State argues Defendant has not preserved this issue for appeal because his objection lacked specificity. "While defense counsel certainly *could* have clarified the specific grounds for the objection, such specificity is not *required* where, as here, the purpose of the objection is apparent from the context." *State v. Delau*, 381 N.C. 226, 236, 872 S.E.2d 41, 47 (2022). Here, Defendant objects as Officer Bowen begins to say he observed the suspect vehicle following Smith on the city camera footage. Thus, it is apparent from context the purpose of the objection and this issue has been properly preserved.

Defendant is correct in his assertion that Officer Bowen's interpretation of the videos were not from firsthand observations of the events depicted. However, Defendant points us to the section of testimony where Officer Bowen is explaining his investigative process using the city camera footage to track the suspect vehicle and pointing to and using the video footage to illustrate. As Officer Bowen's opinion testimony was "helpful to a clear understanding of his testimony" regarding his investigative process, the trial court did not err in allowing it. N.C. Gen. Stat. § 8C-1, Rule 701.

### 2. *Officer White – State Exhibit 1*

Defendant next argues the trial court erred by allowing Officer White to

identify Defendant as one of the individuals depicted in State Exhibit 1 and in a video recording of the robbery, presumably from State Exhibit 5. We disagree. Lay witness testimony identifying a criminal defendant in photographs or video may be allowed "where such testimony is based on the perceptions and knowledge of the witness, the testimony would be helpful to the jury in the jury's fact-finding function rather than invasive of that function, and the helpfulness outweighs the prejudice to the defendant from admission of the testimony." *State v. Patterson*, 249 N.C. App. 659, 663, 791 S.E.2d 517, 520 (2016) (cleaned up).

The State again argues Defendant has not preserved this issue for appeal because his objection lacked specificity. As stated *supra*, "such specificity is not *required* where, as here, the purpose of the objection is apparent from the context." *Delau*, 381 N.C. at 236, 872 S.E.2d at 47. Here, immediately prior to the testimony in question, the trial court held voir dire outside the presence of the jury to discuss Officer White's expected testimony and identification of Defendant. During voir dire, Defendant specifically objected to Officer White's identification of Defendant. Because Defendant's objection followed Officer White's answer identifying Defendant in Exhibit 1, it is apparent from context the basis of the objection. Thus, the issue of whether Officer White's opinion as to Defendant's identity in Exhibit 1 is properly preserved. However, following this objection, Defendant fails to make any objection to Officer White's identification of Defendant within the video footage of the robbery, presumably from Exhibit 5 but the evidence is not specifically identified as such. As

- 14 -

no objection was made to Officer White's identification of Defendant within the video footage in the presence of the jury, this issue was not preserved.

Thus, even assuming *arguendo* that Officer White's first identification of Defendant in Exhibit 1 was error, we cannot find it prejudicial as Defendant was identified by the same officer in the video footage that was also viewed by the jury and in further testimony inquiring about Exhibit 1 without objection. Absent demonstrable prejudice, Defendant's argument fails. *See Buie*, 194 N.C. App. at 733, 671 S.E.2d at 356.

### III.   Conclusion

For the reasons stated herein, we hold the trial court did not abuse its discretion in admitting State Exhibits 1, 2, 3, and 5 as they were properly authenticated and admitted into evidence as illustrative evidence. Further, we hold the trial court did not abuse its discretion in allowing the lay witness opinion testimony of Officer Bowen and Officer White. Thus, we hold Defendant received a fair trial free from error.

NO ERROR.

Judges ZACHARY and STADING concur.

Report per Rule 30(e).